IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LETITIA YOUNG**,

        Plaintiff,

vs.

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION**,

        Defendant.

Civil Case No. 09-744-KI

OPINION AND ORDER

Alan Stuart Graf
P. O. Box 98
Summertown, TN 38483

    Attorney for Plaintiff

Dwight C. Holton
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

Willy M. Le
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington  98104

      Attorneys for Defendant

KING, Judge:

Letitia Young brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act.

## Procedural Background

Ms. Young filed an application for benefits on November 30, 2005, with an alleged onset date of August 3, 1993.  The application was denied initially and on reconsideration.  Ms. Young filed a request for an administrative hearing, which was held on November 4, 2008, before administrative law judge ("ALJ") Timothy C. Terrill.   On December 23, 2008, the ALJ issued an unfavorable decision.  The Appeals Council affirmed the decision of the ALJ, making the ALJ's decision the final decision of the Commissioner.

Ms. Young was 45 years old at the time of the ALJ's decision. She has a college education.  She has not engaged in substantial gainful activity since 1993.

The Commissioner concedes that the ALJ erred in his rejection of the testimony of James Conour, M.D.; the claimant's testimony; and the testimony by written statement of Ms. Young's mother, Sylvia LaCourse.  The sole issue presented is whether the court should remand for further administrative proceedings or credit the improperly rejected evidence and remand for a finding of disability.

## Medical Evidence

The only medical evidence pertinent to the issues in this case is a questionnaire completed by Dr. Conour on October 29, 2008.  The questionnaire shows that his diagnoses of Ms. Young were bipolar disorder, type II, and migraines caused by lithium toxicity.  Asked to describe the clinical findings that supported his diagnoses, Dr. Conour wrote,

> During her treatment at Cascadia, Letitia has displayed symptoms of depression and anxiety. The diagnosis of bipolar disorder is given based on her reported history of a manic episode years ago. She has been medicated for bipolar disorder during her whole treatment, so it is unknown if mania would re-emerge without meds.

Tr. 923.  Dr. Conour listed her mental health symptoms as

> depressed mood, feelings of worthlessness and hopelessness, anhedonia, lack of energy, decreased motivation, increased sleep. At times she has anxiety symptoms including agitation, insomnia, inability to concentrate, increased heart rate and breathing, agoraphobia, [and] short term memory deficits.

Id. Dr. Conour rated Ms. Young's current Global Assessment of Functioning (GAF)[1] at 50, and her highest GAF for the past year as 50. The questionnaire asked Dr. Conour to rate Ms. Young's limitations as "none," "mild," "moderate," "marked," and "extreme" in three areas: activities of daily living, social functioning, and maintaining concentration, persistence or pace.  The questionnaire defined "marked" as "more than moderate but less than extreme," indicating "several activities or functions are impaired," or, if only one activity or function were impaired, "the degree of limitation is such as to seriously interfere with functioning."  The questionnaire does not define "mild," "moderate," or "extreme."  Dr. Conour rated her limitations as "marked" in activities of daily living, "extreme" in maintaining social functioning, and "marked" in maintaining concentration, persistence and pace. Id. Dr. Conour identified Ms. Young's depressive symptoms, including lack of energy and motivation, self-isolation, difficulty with concentration, short term memory deficits, and agoraphobia, as the source of his ratings.  He thought that on average, Ms. Young's mental health impairments would cause her to be absent from work more than two days a month.  Asked about her prognosis, Dr. Conour wrote, "With increased counseling, she *might* make improvements in symptoms over the course of several years, but this is unknown." Tr. 925 (emphasis in original).

---

[1] The GAF scale is divided into 10 ranges of functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, (4th ed. text revision)("DSM-IV-TR") 32. Making a GAF rating requires picking a single value that best reflects an individual's overall level of functioning. Id. A GAF of 50 is characterized by

> serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job).

Id. at 34.

Page 4 - OPINION AND ORDER

**Hearing Testimony**

Ms. Young testified at the hearing that she was diagnosed with bipolar disorder in 1992, a year after she graduated from college. She said she has one or two manic episodes a year, lasting two or three months, and at other times she is severely depressed. She described her manic stages as "I can't stop and I'm very persistent and being belligerent to the fact [sic] that my way is the right way to do it. Then people just give up and let me do it and then I have to suffer the consequences of what I did and the way I handled it." Tr. 30. She described the symptoms of her depression stage:

> I sleep 14 to 16 hours a day. I'm non-functional. I just basically sleep and eat and watch t.v. I can't get myself to do any type of activity. I'd rather be sleeping than thinking about what's going on my life. . . . I cannot stay awake when I'm in the depressive mode. When I'm awake I think of all the negative things that are going on in my life and it's just easier to sleep as long as I can. . . . I just can't even get up to clean my room or do my clothes.

Tr. 31. Ms. Young said she has panic attacks which require her to take Ativan "any time I have to go anywhere." Tr. 32. She generally goes only to the doctor, the dentist and the grocery store. She wears a brace on her right wrist for carpal tunnel. However, her only limitations while wearing the brace are fine motor movements such as "picking up a penny or doing a safety pin or putting on [a] watch." Tr. 35.

The ALJ called a vocational expert ("VE"). Ms. Young's attorney asked the VE whether a person with marked limitation in concentration, persistence and pace, "such that she wasn't getting instructions right, wasn't understanding the way she should do things, and was mistakenly thinking her way was the correct way to do things" would be able to maintain competitive employment. The VE said no.

Page 5 - OPINION AND ORDER

**Lay Witness Testimony**

Ms. Young's mother, Sylvia LaCourse, submitted a statement dated October 10, 2008. Ms. LaCourse stated that Ms. Young had been "sad and hopeless for 6-7 years," and had moved in with her five years earlier. According to the statement, Ms. Young "weeps for days at a time." Tr. 145. When she was manic she had "severe perseveration" and "[didn't] see the consequences of her actions." Id. Ms. LaCourse gave numerous examples of Ms. Young's destructive manic behavior, saying that Ms. Young "created big projects," refused to listen to anyone, and "then [carried] things to the extreme, causing a lot of destruction. She has denial about what's going on around her. She gets anxious and aggressive." Id. Ms. LaCourse reported that Ms. Young had "severe agoraphobia and doesn't leave the house for months, except to go to emergency." Id. She "forgets what's going on and can't remember what she's saying," and "didn't shop at all for food from 1995-2001." Id. Ms. LaCourse added that Ms. Young "cuts her hair off when she's upset," and that she "can't be with people, even her family." Id.

**Legal Standards**

The decision whether to remand for further proceedings is discretionary with the court and turns upon the likely utility of such proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. Holohan v. Massinari, 246 F.3d 1195, 1210 (9th Cir. 2001). If this test is satisfied, then remand for a finding of disability is warranted, regardless of whether the ALJ *might* have articulated a justification for rejecting the doctor's opinion. Harman, 211 F.3d at 1173 (emphasis in original). See also Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004)(characterizing Commissioner's request

for remand as a "heads we win; tails, let's play again" and <u>Moisa v.Barnhart</u>, 367 F.3d 882, 887 (9th Cir. 2004) (the "Commissioner, having lost this appeal, should not have another opportunity . . . any more than Moisa, had he lost, should have an opportunity for remand and further proceedings.")

Improperly rejected evidence is credited and the case remanded for a finding of disability when no outstanding issues preclude a determination of disability, and it is clear from the record that the ALJ would be required to find the claimant disabled if the improperly rejected evidence were credited. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996).

## Discussion

Besides acknowledging that the ALJ erred in his evaluation of the medical evidence from Dr. Conour, the testimony of Ms. Young, and the written testimony of Ms. LaCourse, the Commissioner concedes that the ALJ concluded, "According to Dr. Conour's statement, the claimant would meet the requirements of Listing [of Impairments] 12.04 and 12.06 by satisfying both the "B" and "C"criteria." Tr. 16. [2] Nevertheless, the Commissioner urges the court to remand the case for further administrative proceedings rather than credit the improperly rejected evidence and remand for a finding of disability.

---

[2] The list of impairments set out at 20 CFR pt. 404, subpt. P, App. 1 consists of "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990). Each listed impairment is "defined in terms of several specific medical signs, symptoms, or laboratory test results." <u>Id.</u> at 530. For a claimant to show that his impairment matches one of those listed, the impairment must meet all of the specified medical criteria. <u>Id.</u> A claimant whose impairment or impairments match one or more of those listed is found disabled at step three of the sequential analysis.

Page 7 - OPINION AND ORDER

The Commissioner argues, correctly, that courts have flexibility in applying the "crediting as true" standard, particularly when the Commissioner has erred in evaluating claimant and lay witness testimony. See, e.g., Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); Canh Nguyen v. Astrue, 2010 WL 419939 (D. Or. Jan. 28, 2010) at *3 and Parrish v. Astrue, 2010 WL 55946 (D. Or. Jan. 4, 2010) at *2-3 (Connett applies only to errors in evaluation of testimony). However, in Benecke and Moisa, the Court of Appeals made it clear that the district court should not remand solely to allow the ALJ to make better findings.

Crediting Dr. Conour's opinion as true would establish that Ms. Young satisfies all the criteria under two different listings of the List of Impairments, and is therefore disabled. Crediting Dr. Conour's opinion that Ms. Young had marked limitations in concentration, persistence and pace requires the conclusion, expressed by the VE, that such a person would be unable to maintain competitive employment. Crediting the testimony of Ms. Young and her mother adds additional weight to the conclusion that Ms. Young is disabled.

## Conclusion

Crediting the improperly rejected evidence leaves no outstanding issues to be resolved; the credited evidence requires a finding of disability. Accordingly, the Commissioner's decision is reversed and remanded for a finding of disability.

IT IS SO ORDERED.

Dated this      10th          day of September, 2010.

                                           /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge